STATE OF NORTH CAROLINA v. THOMAS RICHARD JONES

No. 347A99

(Filed 21 December 2000)

### 1. Homicide— felony murder—DWI—implied intent

First-degree murder convictions which arose from driving while impaired were reversed where the defendant was found guilty under the felony murder rule, based upon injuries to others in the victims' car and resulting assault convictions. The North Carolina murder statute, N.C.G.S. § 14-17, designates five specific felonies as the basis for felony murder, each requiring actual

intent to commit the crime; while there is a catchall category of felonies committed with a deadly weapon (such as an automobile), all of the crimes qualified by case law require actual intent to commit the underlying crime. There is no first-degree murder case premised on implied intent as evidenced by culpable or criminal negligence and no language in N.C.G.S. § 14-17 suggesting that the legislature intended or even contemplated that first-degree murder might be premised on implied intent; however, the General Assembly has passed N.C.G.S. § 20-141.4, felony and misdemeanor death by vehicle, in contemplating situations similar to the case at hand. Moreover, the State's theory as to the applicability of the felony murder rule in reckless driving cases has the potential for profoundly unjust results, and it is presumed that the legislature did not intend an unjust result. If culpable negligence is to be a building block in a capital case, it must be by clear mandate of the legislature and not through judicial fiat or through innovative application by prosecutors. There is, however, ample evidence in the record to support a charge of second-degree murder.

**2. Evidence— murder prosecution—pending DWI charge— malice**

The trial court did not err in a prosecution for murder and assault arising from driving while impaired by admitting defendant's pending DWI charge. The circumstances attendant to the pending charge, such as speeding on the wrong side of the road and running another motorist off the road, demonstrate that defendant was aware that his conduct was reckless and inherently dangerous. The evidence therefore tended to show malice, an element of second-degree murder, and was properly admitted under N.C.G.S. § 8C-1, Rule 404(b).

**3. Homicide— DWI—proximate cause and insulating negligence—instructions denied**

The trial court did not err in a prosecution for murder and assault resulting from driving while impaired by not instructing the jury on proximate cause and insulating acts of negligence. The requested instruction that defendant's actions must be the sole and only proximate cause of the collision in order to hold him criminally liable was a misstatement of the law and the record shows no evidence of any negligence by the driver of the other car. Defendant was in her lane and she was forced to swerve into the left lane to try to avoid a collision; defendant's

**STATE v. JONES**

[353 N.C. 159 (2000)]

argument that she should have swerved to the right and hit a telephone pole and/or mailboxes is entirely unpersuasive.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 133 N.C. App. 448, 516 S.E.2d 405 (1999), finding no error in judgments entered by Freeman, (William H.) J., on 6 May 1997 in Superior Court, Forsyth County. On 2 December 1999, the Supreme Court retained defendant's notice of appeal as to a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) and allowed discretionary review of additional issues. Heard in the Supreme Court 13 March 2000.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Jonathan P. Babb, Assistant Attorney General, for the State.*

*David B. Freedman, Dudley A. Witt, and Carol L. Teeter for defendant-appellant.*

ORR, Justice.

Defendant was indicted on 21 October 1996 for the first-degree murders of Julie Marie Hansen and Maia C. Witzl. Defendant was simultaneously indicted for assault with a deadly weapon inflicting serious injury (AWDWISI) on Aline J. Iodice, Melinda P. Warren, and Margaret F. Penney. The State later reduced the charge related to Penney to assault with a deadly weapon (AWDW). On 10 February 1997, an additional indictment charged defendant with AWDWISI on Lea Temple Billmeyer and driving while impaired (DWI).

Defendant was tried capitally at the 21 April 1997 Criminal Session of Superior Court, Forsyth County. The State's evidence at trial tended to show that at approximately 10:30 p.m. on 4 September 1996, defendant crashed his vehicle into another vehicle occupied by six Wake Forest University students. Two of the students were killed in the collision, while three others were seriously injured.

Shortly before the crash, defendant was involved in an altercation while stopped at a red light at an intersection in Winston-Salem, North Carolina. Defendant repeatedly bumped another vehicle from behind with his own vehicle. A witness to the incident heard the defendant use profanity and tell the other driver to get out of the way. According to the witness, when the light changed defendant "zoomed" around the car and "shot on off," moving at an excessive

rate of speed. The driver defendant bumped from behind followed defendant to obtain his vehicle tag number and observed defendant's car run up on a curb, causing a hub cap to fall off. After obtaining defendant's plate number, the driver and his passenger stopped and called 911. The passenger told a police officer that defendant was "driving real crazy" and that "if somebody doesn't get him, he's going to kill somebody."

Prior to the collision at issue in this case, the six students from Wake Forest University were traveling eastbound on Polo Road, while defendant was traveling westbound on the same road at an excessive rate of speed. As the students rounded a curve, they observed two headlights moving quickly toward them in their lane of travel. Iodice, a passenger in the front seat of the vehicle driven by Penney, testified that the headlights "were moving so quickly and I realized they were in our lane from the very first time I saw them until" the collision occurred. Penney raised her foot off the accelerator pedal but could not pull her car to the right because of a telephone pole and mailboxes lining the side of Polo Road. Penney attempted to turn left onto Brookwood Drive to avoid colliding with defendant's vehicle, but defendant moved his vehicle back into his proper lane and crashed into the side of Penney's vehicle.

Hansen and Witzl, each nineteen-year-old passengers in Penney's vehicle, were killed. Billmeyer sustained serious injuries, including a contusion of her kidney, a concussion, and a fractured pelvis. Iodice was diagnosed with a ruptured bladder, internal bleeding, a fractured hip and pelvic bone, and a concussion. Warren's injuries included fractures to her ankle, femur, and pelvis, as well as internal bleeding. Penney received minor injuries, including abrasions and bruises.

The crash investigation revealed that defendant had been drinking alcohol and had a blood-alcohol content level of .046, well below the legal limit of .08. However, the presence of the drugs Butalbital, Alprazlam, and Oxycodone was also found. Although these controlled substances were prescribed by a physician, defendant's doctor and a registered nurse had previously instructed him not to drink or drive while taking the medications. The State's expert at trial testified that the combination of controlled substances and alcohol caused defendant to be appreciably impaired and unfit to operate a motor vehicle safely. Furthermore, the State introduced a record of defendant's 1992 conviction for DWI, as well as testimony concerning a pending DWI charge.

**STATE v. JONES**

[353 N.C. 159 (2000)]

At the conclusion of the evidence, the jury found defendant guilty of the first-degree murders of Hansen and Witzl under the felony murder rule. The jury also found defendant guilty of AWDWISI on Billmeyer, Iodice, and Warren; AWDW on Penney; and DWI. After a capital sentencing proceeding, the jury recommended a sentence of life imprisonment without parole for the murders of Hansen and Witzl, and the trial court entered judgments in accord with that recommendation. The trial court arrested judgment on the three convictions for AWDWISI and sentenced defendant to an active term of 120 days for the AWDW on Penney and 90 days for the DWI. Defendant appealed to the Court of Appeals.

The Court of Appeals, in a divided opinion, found no error. *State v. Jones*, 133 N.C. App. 448, 516 S.E.2d 405 (1999). Defendant appealed to this Court as a matter of right based on a constitutional question and on the dissent below. On 2 December 1999, we allowed defendant's petition for discretionary review of additional issues.

The paramount issue in the case, as raised by the dissent and, in the alternative, defendant's Petition for Discretionary Review, is whether the defendant was properly convicted of first-degree murder under the felony murder rule. The Court of Appeals affirmed the decision of the trial court to allow defendant to be tried capitally for first-degree murder. For reasons outlined and discussed below, we hold the Court of Appeals erred in that for purposes of felony murder: (1) culpable negligence may not be used to satisfy the intent requirements for a first-degree murder charge; and, (2) a defendant may not be subject to a potential death sentence absent a showing of actual intent to commit one or more of the underlying felonies delineated or described in our state's murder statute, N.C.G.S. § 14-17. As a consequence of so holding, we find it unnecessary to address defendant's alternative arguments concerning alleged constitutional violations, *see State v. Colson*, 274 N.C. 295, 163 S.E.2d 376 (1968), *cert. denied*, 393 U.S. 1087, 21 L. Ed. 2d 780 (1969), and the so-called "merger doctrine." As for defendant's conviction for AWDW, he offers no arguments for appeal. It, therefore, stands affirmed. In addition, we affirm the Court of Appeals holding that the trial court committed no error by admitting evidence of defendant's prior acts or by omitting defendant's proposed jury instruction. Thus, defendant's convictions for DWI and AWDWISI are affirmed.

## I

[1] In 1893 the General Assembly codified the common law offense of murder and subdivided first-degree murder into three categories, one of which was "killings occurring in the commission of certain specified felonies 'or other felony.' " *State v. Davis*, 305 N.C. 400, 423, 290 S.E.2d 574, 588 (1982). In 1977, the General Assembly amended this third category of first-degree murder, commonly known as felony murder, so that it applies to any killing "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C.G.S. § 14-17; for a discussion on the history of section 14-17, *see Davis*, 305 N.C. at 422-23, 290 S.E.2d at 588. When a killing is committed in the perpetration of an enumerated felony (arson, rape, etc.) or other felony committed with the use of a deadly weapon, murder in the first degree is established " 'irrespective of premeditation or deliberation or malice aforethought.' " *State v. Wilson*, 313 N.C. 516, 537, 330 S.E.2d 450, 465 (1985) (quoting *State v. Maynard*, 247 N.C. 462, 469, 101 S.E.2d 340, 345 (1958). Moreover, intent to kill is *not* an element of felony murder. *See State v. York*, 347 N.C. 79, 97, 489 S.E.2d 380, 390 (1997).

In the instant case, defendant was charged with first-degree murder under the felony murder rule based on the underlying felony of AWDWISI. The elements of AWDWISI are: (1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death. *See* N.C.G.S. § 14-32(b) (1999). We have defined assault as "an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). A deadly weapon is " 'any article, instrument or substance which is *likely* to produce death or great bodily harm.' " *State v. Bagley*, 321 N.C. 201, 212, 362 S.E.2d 244, 251 (1987) (quoting *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981)) (alteration in original), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

It is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner. *State v. Eason*, 242 N.C. 59, 65, 86 S.E.2d 774, 779 (1955). Thus, a driver who operates a motor vehicle in a manner such that it constitutes a deadly weapon, thereby proximately causing serious injury to another, may be convicted of AWDWISI provided there is either an actual intent to inflict injury or culpable or criminal negligence from

which such intent may be implied. *Id.* at 65, 86 S.E.2d at 778. Culpable or criminal negligence has been defined as " 'such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.' " *State v. Weston*, 273 N.C. 275, 280, 159 S.E.2d 883, 886 (1968) (quoting *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933). Moreover, " '[a]n intentional, wilful or wanton violation of a statute . . . , designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence.' " *State v. McGill*, 314 N.C. 633, 637, 336 S.E.2d 90, 92-93 (1985) (quoting *Cope*, 204 N.C. at 31, 167 S.E. at 458 (1933)). When a safety statute is unintentionally violated, culpable negligence exists where the violation is " 'accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable [foreseeability], amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others.' " *State v. Hancock*, 248 N.C. 432, 435, 103 S.E.2d 491, 494 (1958) (quoting *Cope*, 204 N.C. at 31, 167 S.E. at 458). We note, too, that N.C.G.S. § 20-138.1, which prohibits drivers from operating motor vehicles while under the influence of impairing substances, is a safety statute designed for the protection of human life and limb and that its violation constitutes culpable negligence as a matter of law. *McGill*, 314 N.C. at 637, 336 S.E.2d at 93.

In the case *sub judice*, Hansen and Witzl were killed while defendant committed the crime of AWDWISI on Billmeyer, Iodice, and Warren. Defendant perpetrated the assault by operating his automobile, a deadly weapon, in a culpably or criminally negligent manner. His criminal or culpable negligence was established, as a matter of law, when he was convicted of DWI by the jury, *see id.*; such negligence was also demonstrated by other evidence tending to show that defendant was driving his vehicle substantially in excess of the posted speed limit and on the wrong side of the road. *See* N.C.G.S. § 20-141 (1999); N.C.G.S. § 20-146 (1999), respectively. Moreover, it is clear from the evidence presented at trial that defendant's actions proximately caused serious injury to Billmeyer, Iodice, and Warren. Thus, the elements of AWDWISI have been satisfied, and defendant was properly convicted of that offense as to each of the three victims. We next examine whether AWDWISI may serve as the underlying felony for defendant's first-degree murder conviction under the felony murder rule.

From the outset, we recognize that our analysis of defendant's conviction for AWDWISI demonstrates that culpable or criminal negligence may be used to satisfy the intent requisites for certain dangerous felonies, such as manslaughter, assault with a deadly weapon with intent to kill and AWDWISI. *See* N.C.G.S. § 14-32; *Eason*, 242 N.C. at 65, 86 S.E.2d at 778; *State v. Sudderth*, 184 N.C. 753, 755, 114 S.E. 828, 829 (1922). However, we are aware of no circumstance in which such negligence has served to satisfy the intent element of first-degree murder, a capital offense in North Carolina. Moreover, in interpreting our state's homicide statute, N.C.G.S. § 14-17, we can find no language suggesting that the legislature either contemplated or intended such a result.

A close examination of our state's murder statute reveals three types of criminal conduct that qualify as first-degree murder: (1) willful, deliberate, and premeditated killings (category 1); (2) killings resulting from poison, imprisonment, starvation, torture, or lying in wait (category 2); and (3) killings that occur during specifically enumerated felonies or during a "felony committed or attempted with the use of a deadly weapon" (category 3). N.C.G.S. § 14-17. All of these categories require that the defendant have a *mens rea* greater than culpable or criminal negligence; that is, they all require that the defendant had "actual intent" to commit the act that forms the basis of a first-degree murder charge.

First-degree murders committed under circumstances of willful deliberation and premeditation (category 1), by definition, require an actual intent on the part of a defendant to kill another. *State v. Duncan*, 282 N.C. 412, 193 S.E.2d 65 (1972) (holding that a specific intent to kill is an essential element of first-degree murder). Case law has also established that a murder perpetrated by lying in wait (category 2) demonstrates by circumstance an actual intent to participate in conduct that results in a homicide. *State v. LeRoux*, 326 N.C. 368, 390 S.E.2d 314, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990). Other specifically designated criminal conduct under category 2, while not necessarily mandating an actual intent to kill, requires at minimum an actual intent to undertake the conduct resulting in death. Thus, even if the killing itself was not intended, the actual intent to torture, poison, starve, or imprison the victim must be present in order for the killing to qualify as first-degree murder. *See, e.g., State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986) (killing by poison is murder in first degree if evidence tends to show only an intent to poison and not a specific intent to kill). Felony murder, as

exemplified by criminal conduct in category 3, operates similarly. Again, the actual intent to kill may be present or absent; however, the actual intent to commit the underlying felony is required. This is not to imply that an accused must intend to break the law, but rather that he must be purposely resolved to participate in the conduct that comprises the criminal offense.

N.C.G.S. § 14-17 initially enumerates five specific crimes that may serve as underlying felonies for purposes of the felony murder rule (arson, rape, robbery, kidnapping, and burglary). The statute also incorporates a sixth umbrella grouping of "other felon[ies] committed or attempted with the use of a deadly weapon," which includes such crimes as AWDWISI and shooting into an occupied dwelling or vehicle. *See, e.g.*, N.C.G.S. § 14-32 *and* N.C.G.S. § 14-34.1 (1999), respectively. Each of the five enumerated felonies requires that the perpetrator "intends" to commit the offense. Burglary requires specific intent as one of its elements while rape, kidnapping, and robbery are general intent crimes. *See* N.C.G.S. §§ 14-51 (1999) (burglary), 14-27.2 (1999) (rape), 14-39 (1999) (kidnapping); for elements of robbery, a common law crime, *see State v. Lawrence*, 262 N.C. 162, 136 S.E.2d 595 (1964). Arson, as a "malice" type crime, is neither a specific nor a general intent offense but requires *"willful* and malicious" conduct. *State v. Vickers*, 306 N.C. 90, 100, 291 S.E.2d 599, 606 (1982) (emphasis added), *overruled on other grounds by State v. Barnes*, 333 N.C. 666, 430 S.E.2d 223 (1993).

Whether "general intent," "specific intent," or "malice" crimes, all of the enumerated offenses require a level of intent greater than culpable negligence on the part of the accused. In short, the accused must be purposely resolved to commit the underlying crime in order to be held accountable for unlawful killings that occur during the crime's commission. *See, e.g., Maynard*, 247 N.C. 462, 101 S.E.2d 340 (holding that first-degree murder conviction is appropriate if killing occurred during defendant's perpetration or attempt to perpetrate a robbery); other case examples showing defendant's actual intent to commit the underlying enumerated offense include *State v. Simmons*, 286 N.C. 681, 213 S.E.2d 280 (1975) (burglary), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976); *State v. McGlaughlin*, 286 N.C. 597, 213 S.E.2d 238 (1975) (arson), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976); *State v. Mays*, 225 N.C. 486, 35 S.E.2d 494 (1945) (rape); and *State v. Roseborough*, 344 N.C. 121, 472 S.E.2d 763 (1996) (kidnapping).

Specific crimes that have qualified as an underlying felony under both the pre- and post-amendment statute's catchall grouping include: discharging a firearm into an occupied vehicle or structure, *see, e.g., State v. King*, 316 N.C. 78, 340 S.E.2d 71 (1986); felonious escape, *see, e.g., State v. Lee*, 277 N.C. 205, 176 S.E.2d 765 (1970); armed felonious breaking and entering and larceny, *see, e.g., State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666 (1972); sodomy under threat of deadly weapon, *see, e.g., State v. Doss*, 279 N.C. 413, 183 S.E.2d 671 (1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 762 (1972); assault with a deadly weapon with intent to kill or with intent to inflict serious injury, *see, e.g., State v. Terry*, 337 N.C. 615, 447 S.E.2d 720 (1994); and felonious child abuse, *see, e.g., State v. Pierce*, 346 N.C. 471, 488 S.E.2d 576 (1997). Without exception, each of these crimes, whether individually typed as specific intent or general intent in nature, have required actual intent on the part of the perpetrator. As with the enumerated felonies, in order to be held accountable for unlawful killings that occur during the commission or attempted commission of these crimes, the perpetrator must have been purposely resolved to commit the underlying offense. For example, a defendant may face a first-degree murder charge for an unintended killing that resulted from his firing a weapon into an occupied structure, *but only if the defendant intended to shoot into the building. See, e.g., State v. Cannon*, 341 N.C. 79, 459 S.E.2d 238 (1995) (evidence supported instruction that defendant confessed to first-degree murder [under felony murder rule] when he stated he willfully fired three times into an occupied vehicle). An examination of cases involving other felonies qualifying as "committed or attempted with the use of a deadly weapon" yields identical results: actual intent to commit the felony is required. *See, e.g., Terry*, 337 N.C. 615, 447 S.E.2d 720 (holding that facts show defendant intentionally committed assault with deadly weapon with intent to kill, an underlying felony for purposes of the felony murder rule). Moreover, after an exhaustive review, we can find in our jurisdiction no capital case of any variety which suggests that the intent element of first degree murder can be satisfied without a showing of either a specific intent to kill or an actual intent to participate in the conduct described in N.C.G.S. § 14-17. In every conviction for first degree murder by torture, poisoning, etc., the State proved beyond a reasonable doubt that the defendant actually intended to commit those acts. Similarly, in every felony murder conviction of which we are aware, the State proved beyond a reasonable doubt either that the defendant specifically intended to kill or that the defendant actually intended to commit the underlying offense. Although a showing of

culpable negligence can satisfy the intent requirement for certain aforementioned crimes, it has not formed the basis of intent for a first-degree murder conviction.

In sum, the North Carolina murder statute designates five specific felonies as qualifying to act as a basis for felony murder. Each requires a minimum of actual intent on the part of the accused to commit the crime. As for the statute's catchall category of felonies committed with the use of a deadly weapon, case law has qualified a host of other crimes, all of which share the requirement of actual intent to commit the underlying crime). Conspicuously absent is a first-degree murder case premised on implied intent as evidenced by a defendant's culpable or criminal negligence. Moreover, we can find no language in N.C.G.S. § 14-17 suggesting that our state's legislature even contemplated, no less intended, that the crime of first-degree murder might be premised on a defendant's implied intent (to kill or commit the underlying offense). If anything, recent action by our General Assembly indicates just the opposite is true for homicides resulting from impaired or negligent drivers. In contemplating situations similar to the case *sub judice*, the legislature passed N.C.G.S. § 20-141.4, titled "Felony and misdemeanor death by vehicle." The statute provides, in pertinent part:

(a1) Felony Death by Vehicle—A person commits the offense of felony death by vehicle if he unintentionally causes the death of another person while engaged in the offense of impaired driving . . . and commission of that offense is the proximate cause of death.

(a2) Misdemeanor Death by Vehicle—A person commits the offense of misdemeanor death by vehicle if he unintentionally causes the death of another person while engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic, other than impaired driving . . . , and commission of that violation is the proximate cause of the death.

(b) Punishments—Felony death by vehicle is a Class G felony. Misdemeanor death by vehicle is a Class 1 misdemeanor.

(c) No Double Prosecutions—No person who has been placed in jeopardy upon a charge of death by vehicle may be prosecuted for the offense of manslaughter arising out of the same death . . . .

N.C.G.S. § 20-141.4 (1999).[1] Significantly, the sanctions associated with these crimes are substantially less draconian than the capital trial defendant faced in the instant case. It is apparent that the General Assembly has demonstrated its belief that the conduct described, though egregious and deserving of severe punishment, does not warrant the severity of sanctions concomitant with felony murder.[2]

When interpreting statutes, this Court presumes that the legislature did not intend an unjust result. *King v. Baldwin*, 276 N.C. 316, 325, 172 S.E.2d 12, 20 (1970). The State's theory as to the applicability of the felony murder rule in reckless driving cases has the potential for just such a result. Consider the following: Driver *A*, who drives with criminal negligence, hits another car containing only its driver, who is killed. Meanwhile, Driver *B* acts precisely the same way, but has the added misfortune of injuring a third party. In the State's view, Driver *A* can be convicted of, at most, second-degree murder; there is no "second victim" and, hence, no underlying felony on which a felony murder charge could depend.[3] Driver *B*, on the other hand, could well be charged with first-degree murder and capitally tried, with the AWDWISI on the third party serving as the underlying felony for felony murder.

While we acknowledge the legislature considered killing one person and injuring another a more serious crime than killing only one

---

1. We recognize that the statute does not preclude second-degree murder prosecutions for deaths resulting from DWI-related accidents when evidence proves defendant acted with malice or a depraved heart. *See, e.g., State v. Rich*, 351 N.C. 386, 527 S.E.2d 299 (2000) (upholding second-degree murder conviction in DWI-related collision causing death). However, as defendant in the case *sub judice* was not convicted of second-degree murder or charged with or convicted of felony death by vehicle, we do not address the issue of whether such charges may have proved more appropriate under the circumstances.

2. Georgia, among other states, has adopted a similar statutory scheme for vehicular deaths. Georgia's statute, in particular, extends to prohibit murder prosecutions for reckless drivers. *See* Ga. Code Ann. § 40-6-393 (2000) (vehicular homicide defined as deaths resulting from driving in reckless manner, under the influence of stimulants, or while fleeing police).

3. Although this Court has expressly disavowed the so-called "merger doctrine" in felony murder cases involving a felonious assault on one victim that results in the death of another victim, *see, e.g., State v. Abraham*, 338 N.C. 315, 451 S.E.2d 131 (1994), cases involving a single assault victim who dies of his injuries have never been similarly constrained. In such cases, the assault on the victim cannot be used as an underlying felony for purposes of the felony murder rule. Otherwise, virtually all felonious assaults on a single victim that result in his or her death would be first-degree murders via felony murder, thereby negating lesser homicide charges such as second-degree murder and manslaughter.

person, we conclude the increased punishment for hypothetical Driver *B* would bear no rational relationship to the punishment for Driver *A*. Driver *A*, who kills one person and is convicted of second-degree murder, may receive a sentence as short as ninety-four months, while Driver *B*, who kills one person and injures another, is subject to the death penalty and upon conviction receives, at minimum, a sentence of life in prison without parole. *See* N.C.G.S. § 14-17; N.C.G.S. § 15A-2000 (1999) (sentencing options for first-degree murder convictions); *and* N.C.G.S. § 15A-1340.17 (1999) (sentencing guidelines for felonies).

Although common sense, case law, and legislative history each suggest a driver who kills one person and injures another can expect greater sanction than a driver who kills only one person, the offenses and their respective punishments must reflect a rational relationship. In our view, that means Driver *B* may be punished for: (1) the death he caused—as felony death by vehicle, manslaughter, or second-degree murder; and (2) the separate injury he caused—as assault with a deadly weapon with intent to inflict serious injury. Such a limitation simultaneously eliminates the result of subjecting the accused to the extreme sanction of the death penalty while providing a means to enhance a defendant's punishment in proportion to his crimes. For the conduct as described, Driver *B* would face one prison sentence for the killing and an additional prison sentence for his assault on the injured person. Thus, if Driver *B* were convicted of second-degree murder for the killing and AWDWISI for the assault, he would receive a sentence of at least ninety-four months for the killing, and an additional sentence of fifteen to seventy-four months for the assault. Alternative conviction combinations would follow suit.

Finally, the potential effects of defendant's first-degree murder conviction serve well as harbingers of profoundly unjust results that could lie ahead. Consider the following:

(1) A mother, late for a PTA meeting, weaves through traffic driving 80 m.p.h. in a 55 m.p.h. speed zone. If she causes a collision that kills another driver and hurts his passenger, might she be subject to a death sentence for her actions?

(2) A corner-cutting contractor building a bleacher for a local college uses five-inch bolts instead of the six-inch bolts required by a safety statute.[4] If those bleachers later col-

---

4. When a safety statute (such as one designating a specific bolt size or length) is violated, culpable negligence exists where the violation is "accompanied by reckless-

lapse, killing one fan and injuring another, could the contractor face a capital trial?

Under the felony murder rule as espoused by the State in the instant case, both the mother and contractor could be tried capitally for their respective offenses—an extreme result to be sure and, not insignificantly, one without precedent in our state's jurisprudence. As our courts have never before yielded such results, we are equally certain the legislature neither contemplated nor intended such apparent injustices when it amended the state's murder statute in 1977. Moreover, we refuse to rely on prosecutorial discretion as a means to determine whether one criminally negligent driver should be tried capitally (as defendant in the instant case was) while another (the hypothetical mother) should not. If culpable negligence is to be a building block of a capital case, it must be by clear mandate of the legislature and not by judicial fiat or through innovative application by prosecutors. *See Price v. Edwards*, 178 N.C. 493, 101 S.E. 33 (1919) (holding that General Assembly is not presumed to intend innovations upon the common law and, accordingly, innovations not within the Assembly's intentions shall not be carried into effect). As a consequence, we hold that defendant's first-degree murder convictions must be reversed. In addition, we find there is ample evidence in the record to support a charge of the lesser included offense of second-degree murder. Therefore, pursuant to N.C.G.S. § 15A-1447(c), this case is remanded for proceedings not inconsistent with this opinion.

## II

[2] Defendant additionally contends that the trial court erred by admitting evidence of his pending DWI charge and by omitting his proffered jury instruction on proximate cause and insulating acts of negligence. We disagree.

Evidence of defendant's pending DWI charge was used to demonstrate that he had the requisite state of malice, one of the elements of the charge of second-degree murder that was submitted to the jury. Rule 404(b) of the North Carolina Rules of Evidence allows evidence of other crimes, wrongs, or acts by a defendant if it is used to show a

___

ness or probable consequences of a dangerous nature." *Hancock*, 248 N.C. at 435, 103 S.E.2d at 494 (1958). Thus, using the theory espoused by the State in the instant case, the contractor's actions as described would qualify for prosecution as first-degree murder under the felony murder rule.

mental state such as malice. *State v. Byers*, 105 N.C. App. 377, 383, 413 S.E.2d 586, 589 (1992). While we recognize that such evidence may not be used to show a defendant's propensity to commit a crime, *id.*, we agree with the State's contention that the circumstances attendant to the pending DWI charge—defendant was speeding on the wrong side of the road and ran another motorist off the road while impaired—demonstrate that defendant was aware that his conduct leading up to the collision at issue here was reckless and inherently dangerous to human life. Thus, such evidence tended to show malice on the part of defendant and was properly admitted under Rule 404(b).

[3] As for defendant's contention that the trial court erred by failing to instruct the jury on proximate cause and insulating acts of negligence, we find his arguments to be unpersuasive. Defendant's requested instruction required the jury to find his actions were the sole and only proximate cause of the collision in order to hold him criminally liable. As such an instruction is a misstatement of the law, the trial court properly rejected it. *See State v. Hollingsworth*, 77 N.C. App. 36, 39, 334 S.E.2d 463, 465 (1985) (holding that defendant's culpable negligence need not be the only proximate cause of a victim's death in order to be found criminally liable; a showing that defendant's actions were one of the proximate causes is sufficient).

As to the jury instruction for insulating acts of negligence, the trial court again was correct in not submitting the charge. In order for the negligence of another to insulate defendant from criminal liability, that negligence "must be such as to break the causal chain of defendant's negligence; otherwise, defendant's culpable negligence remains a proximate cause, sufficient to find him criminally liable." *Id.* As the Court of Appeals duly noted in the case *sub judice, see Jones*, 133 N.C. App. at 461, 516 S.E.2d at 414, the record shows no evidence of any negligence on the part of Penney while driving her automobile. Defendant was in Penney's lane of travel and she was forced to swerve into the left lane in an effort to avoid a collision. Defendant's argument that Penney should have swerved to the right and hit a telephone pole and/or mailboxes is entirely unpersuasive and is, accordingly, overruled.

As a result, we affirm the Court of Appeals' finding of no error on the part of the trial court involving defendant's multiple convictions for AWDWISI, AWDW or DWI. However, as we have reversed defendant's convictions of and sentences for first-degree murder, it is not necessary to arrest judgments for the AWDWISI convictions, as they

are no longer underlying felonies for the murders. We thus remand the AWDWISI convictions to the Court of Appeals for further remand to the trial court for sentencing.

In conclusion, as a result of the foregoing analysis, we affirm the Court of Appeals' holding of no error as to defendant's convictions and sentences for AWDW and DWI. We reverse the decision of the Court of Appeals as well as defendant's convictions and sentences of life imprisonment without parole for the first-degree murders of Julie Marie Hansen and Maia C. Witzl, and we remand those cases to the Court of Appeals for further remand to the trial court for proceedings not inconsistent with this opinion. Finally, we affirm the Court of Appeals' holding of no error as to defendant's convictions for AWDWISI, but we remand those three cases to the Court of Appeals for further remand to the trial court for sentencing.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND REMANDED FOR SENTENCING IN PART.