**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4777

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DARRYL EUGENE MILLS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:15-cr-00295-RJC-DCK-1)

Argued: January 31, 2019                    Decided: March 5, 2019

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

After Darryl Eugene Mills pleaded guilty to one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), the district court sentenced him to 70 months' imprisonment. That sentence was at the low end of the 70 to 87 month advisory range that the district court found was applicable under the Sentencing Guidelines, which was based in part on the district court's conclusion that Mills's prior North Carolina conviction for assault with a deadly weapon inflicting serious injury was a conviction for a "crime of violence." In response to Mills's argument that his prior North Carolina conviction was not for a crime of violence as defined in the Sentencing Guidelines and therefore that the sentencing range should have been 37 to 46 months' imprisonment, the district court stated that even if it did not treat the prior conviction as a qualifying predicate, it would have imposed the same 70-month sentence as an upward variance sentence because it believed that 70 months was "necessary and sufficient but not greater than necessary . . . to accomplish the [18 U.S.C. §] 3553(a) factors," based on the reasons that the court had already explained to Mills.

On appeal, Mills again argues that his prior North Carolina conviction did not qualify as a conviction for a crime of violence and that the district court erred in so concluding. While the reasons Mills gives are not without persuasive force, we nonetheless conclude that any error that the district court might have committed in treating Mills's prior North Carolina conviction as a crime-of-violence predicate was harmless because the court would have imposed the same 70-month sentence regardless of how it resolved the disputed Guidelines issue and the 70-month sentence would, in the

2

circumstances, have been reasonable. *See, e.g.*, *United States v. Gomez-Jimenez*, 750 F.3d 370, 382–86 (4th Cir. 2014). Accordingly, we affirm.

I

On the morning of September 11, 2015, police officers, using their vehicles, blocked Mills's vehicle, which was at a gas station in Charlotte, North Carolina, with the purpose of arresting the passenger in Mills's vehicle on an outstanding warrant. Mills attempted to bypass the blockade by driving in reverse, but in doing so, he hit an unmarked police vehicle behind him. He then "spun his tires in an attempt to evade apprehension." But after he realized that his vehicle was boxed in, he complied with the officers' commands. As the officers approached Mills's vehicle, they observed a handgun in Mills's lap, which was loaded. Subsequently, Mills pleaded guilty to one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).

The presentence report prepared for Mills's sentencing concluded that under U.S.S.G. § 2K2.1(a)(4)(A), the base offense level for his conviction was 20 because Mills had a prior felony conviction for a "crime of violence," namely, a 2006 North Carolina conviction for committing assault with a deadly weapon inflicting serious injury, in violation of N.C. Gen. Stat. § 14-32(b). The report also added two offense levels because the firearm was stolen and two offense levels because of Mills's reckless endangerment when fleeing police, but it deducted three offense levels for acceptance of responsibility, for a total offense level of 21. When Mills's offense level of 21 was combined with his criminal history category of V, the recommended sentence was 70 to 87 months'

imprisonment. If, however, Mills's prior North Carolina assault conviction had not been designated as a conviction for a "crime of violence," his offense level would have dropped six levels, and his advisory sentencing range would have been 37 to 46 months' imprisonment.

Mills filed an objection to the presentence report's characterization of his North Carolina assault conviction as one for a "crime of violence," arguing that because North Carolina assault can be committed with a *mens rea* of "culpable negligence," it did not require the type of purposeful conduct necessary to satisfy the "force clause" used to define "crime of violence" in U.S.S.G. § 4B1.2(a)(1) (defining "crime of violence" to include any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another").

In its response, the government conceded that "not *every* [North Carolina assault with a deadly weapon inflicting serious injury] conviction [was] a crime of violence." But it argued that the North Carolina assault offense was "divisible" and therefore that application of the "modified categorical approach" allowed the court to consider the indictment on which Mills was charged to determine whether his prior conviction was for a crime of violence. It explained that North Carolina law establishes that "[a] defendant . . . must be charged with culpable negligence to be convicted on a culpable negligence standard," citing *State v. Stevens*, 745 S.E.2d 64, 69 (N.C. Ct. App. 2013), and *State v. Hines*, 600 S.E.2d 891, 896 (N.C. Ct. App. 2004). And, the government argued, because the indictment underlying Mills's prior conviction, which the government provided to the court, showed that Mills was charged and convicted under "an 'actual intent' theory

4

rather than a negligence theory," his conviction qualified as a "crime of violence" under the force clause of § 4B1.2(a)(1). That indictment showed that Mills was charged in 2005 with "unlawfully, willfully and feloniously us[ing] a gun, a deadly weapon, to assault and inflict serious injury upon" another.

After the parties filed their responses to the presentence report, the Sentencing Commission revised the definition of "crime of violence" in § 4B1.2(a), leaving the "force clause" unchanged but removing the so-called "residual clause" and adding in its place a number of enumerated offenses, including "aggravated assault." *See* U.S.S.G. Supp. to App. C, Amend. 798 (eff. Aug. 1, 2016).

The parties thereafter filed additional papers to argue further whether Mills's conviction for assault with a deadly weapon inflicting serious injury qualified as a crime-of-violence conviction. Mills argued that the crime was not, in fact, divisible, as the government argued, "because North Carolina law does not require the jury to unanimously agree that a defendant committed the offense with a particular *mens rea*." He also argued that *United States v. Barcenas-Yanez*, 826 F.3d 752 (4th Cir. 2016), established that the generic version of "the now-enumerated offense of 'aggravated assault'" in revised § 4B1.2(a) also requires a *mens rea* greater than "recklessness." The government continued to maintain that North Carolina assault with a deadly weapon inflicting serious injury was a divisible offense and that the relevant indictment, which could be considered under the modified categorical approach, showed that the version of the crime for which Mills had been convicted was a crime of violence because it had "as an element the use, attempted use, or threatened use of physical force against the person

5

of another," U.S.S.G. § 4B1.2(a)(1), and now also because it amounted to generic "aggravated assault," *id.* § 4B1.2(a)(2).

At sentencing, the district court agreed with the government. Although the court acknowledged the difficulty of determining when the modified categorical approach could be used, it concluded that the North Carolina offense of assault with a deadly weapon inflicting serious injury was divisible by *mens rea* and that the indictment showed that Mills was charged and convicted with a version of the crime that had a sufficient *mens rea* to qualify as a "crime of violence" under the "force clause" in § 4B1.2(a)(1). Accordingly, the court concluded that the presentence report had correctly calculated Mills's advisory sentencing range as 70 to 87 months' imprisonment.

In light of the court's conclusion, counsel for Mills urged the court to impose a sentence at the bottom of the recommended range — specifically, 70 months' imprisonment — arguing (1) that Mills's offense level took into account "all the aspects of his offense, including his possession of a stolen gun" and that his criminal history was similarly adequately represented by his criminal history category of V; (2) that the offense conduct was "unusual in certain respects" in that Mills was not "the target of some massive investigation" but was instead found to be in possession of a firearm while police were attempting to arrest someone else; (3) that the absence of Mills's incarcerated father, while not an excuse for Mills's conduct, had "contributed to him going down the wrong road in his life"; (4) that Mills's desire not "to repeat [that] cycle," but instead to be present for his own sons, would deter him from future illegal conduct; and (5) that his family members' presence at the hearing "show[ed] that he ha[d] family support, which

6

would help protect the public under [18 U.S.C. §] 3553(a)." The government agreed that a sentence at the "low end" of the advisory sentencing range, as the court had determined it, would be appropriate.

The court then sentenced Mills to 70 months' imprisonment after stating that it had "consulted the advisory Guidelines [and] considered the arguments of the attorneys." It explained further that a 70-month sentence accounted for "the serious nature of [Mills's] offense" — namely, Mills's "possession of a stolen firearm in [his] lap" while he was "attempt[ing] to evade police effecting service of [a] warrant" — and also accounted for Mills's "history and characteristics," including "his many convictions for assault, a couple for resisting, [a] previous conviction for evading, [and a] number of convictions involving improper possession or acquisition of firearms," all of which "indicate[d] to the Court that a lengthy sentence [was] necessary to deter and to protect the public from further crimes" by Mills. The court then also observed that "[t]he 70-month sentence is 24 months above the high end of the range" that the Guidelines would have advised had the court sustained Mills's objection to the crime-of-violence adjustment. But it stated that 70 months "is the sentence that [it] would have imposed *even had the other range been the applicable one*" (emphasis added), because it had concluded that "70 months is a necessary and sufficient but not greater than necessary sentence to accomplish the 3553(a) factors."

From the district court's judgment, dated November 15, 2016, Mills filed this appeal.

7

## II

Mills contends that his prior conviction for North Carolina assault with a deadly weapon inflicting serious injury, in violation of N.C. Gen. Stat. § 14-32(b), did not constitute a conviction for a "crime of violence," as defined in U.S.S.G. § 4B1.2(a) and applied in § 2K2.1(a)(4)(A), and therefore that the sentencing range for his current conviction should have been 37 to 46 months' imprisonment, rather than the 70 to 87 month range calculated by the district court. He argues that his prior offense did not have "as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), and also that it did not constitute the enumerated offense of "aggravated assault," as generally defined, *id.* § 4B1.2(a)(2).

Focusing categorically on the *mens rea* of his prior conviction, Mills notes that in North Carolina, a defendant "may be convicted of [assault with a deadly weapon inflicting serious injury] provided there is either an *actual intent* to inflict injury or *culpable or criminal negligence* from which such intent may be implied." *State v. Jones*, 538 S.E.2d 917, 923 (N.C. 2000) (emphasis added); *see also id.* (explaining that culpable negligence exists where the unintentional violation of a safety statute "is accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable foreseeability, amounting altogether to a *thoughtless disregard* of consequences or of a *heedless indifference* to the safety of others" (emphasis added) (internal quotation marks, brackets, and citation omitted)). And consistent with this *mens rea*, as he points out, it is also well settled in North Carolina "that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner," such that a driver who

8

"proximately caus[es] serious injury to another" by "operating his automobile . . . in a culpably or criminally negligent manner" has committed the crime of assault with a deadly weapon inflicting serious injury. *See id.* at 922–23. Building on this aspect of North Carolina law, Mills maintains that the assault crime defined by § 14-32(b) is a singular, indivisible offense and that because it may be committed with a *mens rea* of "culpable negligence," it *neither* requires the defendant to *use* (or attempt or threaten to *use*) physical force against the person of another *nor* constitutes the enumerated offense of "aggravated assault," as we have defined that term. *See Barcenas-Yanez*, 826 F.3d at 756 (recognizing that "inclusion of a mere reckless state of mind renders [a crime] broader than" "the 'generic' aggravated assault offense").

The government, amplifying the arguments it made to the district court, contends (1) that assault with a deadly weapon inflicting serious injury categorically qualifies as a crime of violence under the force clause in § 4B1.2(a)(1); (2) that, alternatively, the North Carolina crime is "divisible as to mens rea" and that the indictment related to Mills's offense establishes that he was charged and convicted of the version of the offense that qualifies as a crime of violence because it required proof of actual intent, rather than culpable negligence; and (3) that any error in calculating Mills's advisory sentencing range was, in any event, harmless.

At the outset, we express some doubts about whether the district court correctly classified Mills's North Carolina assault conviction under § 14-32(b) as one for a crime of violence under the current version of the Sentencing Guidelines. *Compare Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (holding that the Florida felony offense of DUI causing

9

serious bodily injury did not qualify as a crime of violence under § 16(a)'s force clause because "[t]he key phrase in § 16(a) — the 'use . . . of physical force against the person or property of another' — most naturally suggests a higher degree of intent than negligent or merely accidental conduct"), *with Jones*, 538 S.E.2d at 923 (recognizing that a driver who commits the crime of "operating [a] motor vehicle[] while under the influence of impairing substances . . . [engages in] culpable negligence as a matter of law" and that if such an impaired driver "operates [his] motor vehicle in a manner such that it constitutes a deadly weapon, thereby proximately causing serious injury to another, [he] may be convicted of [assault with a deadly weapon inflicting serious injury]"); *compare also Mathis v. United States*, 136 S. Ct. 2243, 2249, 2253 (2016) (holding that the modified categorical approach may only be used when the criminal provision under which the defendant was convicted includes "alternative elements" defining distinct crimes, as opposed to "various factual means of committing a single element" upon which a jury need not unanimously agree), *with Hines*, 600 S.E.2d at 895–96 (holding that the trial court improperly instructed the jury that an aggravated assault offense could be committed with either actual intent or culpable negligence when the indictment did not allege a culpable negligence theory because "the variance between the indictment and the jury instruction substantially affected [the] defendant's ability to prepare a defense," but nowhere suggesting that if a culpable negligence theory had been properly charged, the jury would have been required to agree unanimously as to which type of *mens rea* the defendant possessed), *and Stevens*, 745 S.E.2d at 68–69 (same).

Nonetheless, in this case, we need not, and we do not, resolve these issues, as we are confident that even under Mills's position that the district court erred in treating his prior assault conviction as a conviction for a crime of violence, the purported error was harmless.

It is well established that we will not vacate a sentence if we determine that the district court's improper calculation of the Guidelines advisory sentencing range was harmless. *See* Fed. R. Crim. P. 52(a) (providing that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"); *see also, e.g.*, *United States v. Savillon-Matute*, 636 F.3d 119 (4th Cir. 2011). Of course, "[w]hen a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). This conclusion follows from "[t]he Guidelines' central role in sentencing" — including the requirement that the sentencing court "begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* (internal quotation marks and citation omitted). But, as the *Molina-Martinez* Court also recognized, "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. . . . *The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range*." *Id.* at 1346 (emphasis added).

Consistent with *Molina-Martinez*, we have recognized that a Guidelines error is harmless and does not warrant vacating the defendant's sentence if the record shows that

11

"(1) 'the district court would have reached the same result even if it had decided the [G]uidelines issue the other way,' and (2) 'the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor.'" *Gomez-Jimenez*, 750 F.3d at 382 (quoting *Savillon-Matute*, 636 F.3d at 123). We employ this inquiry out of recognition that "it would make no sense to set aside a reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Hargrove*, 701 F.3d 156, 162 (4th Cir. 2012) (alterations and citation omitted).

Applying this test here, as to the first prong, the district court made it abundantly clear that it would have imposed the same 70-month sentence even had it sustained Mills's objection to treating his North Carolina § 14-32(b) assault conviction as one for a crime of violence. The court specifically recognized that had it agreed with Mills on that issue, the 70-month sentence it was imposing would have been "24 months above the high end of the range" that such a ruling would have produced. But even while it recognized the degree of the variance, the court expressly stated that 70 months' imprisonment "is the sentence that the Court would have imposed *even had the other range been the applicable one*" (emphasis added) because it had concluded that "70 months [was] a necessary and sufficient but not greater than necessary sentence to accomplish the § 3553(a) factors." Under our precedents, this expression of the sentencing court's views suffices to establish that the court would have imposed the same sentence even had it resolved the challenged Guidelines calculation in the defendant's favor. *See, e.g.*, *Gomez-Jimenez*, 750 F.3d at 382–83.

12

"We therefore proceed to the second [prong] of the inquiry, whether the district court's sentence[] [was] substantively reasonable." *Gomez-Jimenez*, 750 F.3d at 383. In reviewing the 70-month sentence for substantive reasonableness, we must "examine[] the totality of the circumstances" — including the extent of the variance from the assumed applicable advisory range of 37 to 46 months' imprisonment — "to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Id.* But in doing so, we must also "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Applying these principles to the circumstances here, we conclude that the district court's individualized application of the § 3553(a) sentencing factors supports its conclusion that, even if the applicable advisory range was 37 to 46 months' imprisonment, a variance to a 70-month sentence was necessary to satisfy the basic aims of sentencing. While the court's discussion of the § 3553(a) factors was not extensive, it was sufficient, succinctly emphasizing the particularly dangerous nature of the circumstances involved in Mills's particular § 922(g) offense, including the fact that Mills was found to have "a stolen firearm in [his] lap at the time authorities were attempting to serve a warrant on a passenger" and that he spun his "tires in an apparent attempt to evade police effecting service of that warrant." The court also emphasized Mills's significant criminal history, including "his many convictions for assault, a couple for resisting, [a] previous conviction for evading, [and a] number of convictions involving improper possession or acquisition of firearms." Based on these

13

considerations, the court reasonably concluded that the application of the § 3553(a) factors indicated that "a lengthy sentence" — specifically, a sentence of 70 months' imprisonment — was "necessary to deter and to protect the public from further crimes [by] Mr. Mills."

Moreover, given that the government had provided the court with reliable information about Mills's prior North Carolina conviction, the district court's decision to impose an alternative variance sentence of 70 months' imprisonment made good sense. Even if Mills's prior conviction for North Carolina assault with a deadly weapon inflicting serious injury should not have been identified as a conviction for a crime of violence in calculating his base offense level under the Sentencing Guidelines, the district court was nonetheless provided with the state court indictment showing that Mills's prior offense conduct involved "willfully . . . us[ing] a gun . . . to assault and inflict serious injury" on another human being. The court was thus entitled to take that conduct into account when determining what sentence was "sufficient, but not greater than necessary, to comply with the" basic aims of sentencing, 18 U.S.C. § 3553(a), and it is no surprise that, having done so, the court concluded that it was appropriate to impose an alternative variance sentence at the bottom of the advisory range that would have applied had the conviction for that conduct counted as one for a crime of violence. *See United States v. Doctor*, 842 F.3d 306, 317–18 (4th Cir. 2016) (Wilkinson, J., concurring) (observing that "as the district court sets about [its] discretionary exercise, it has various tools to impose a stricter sentence if it believes that the categorical approach is ignoring a violent criminal history or disserving the general aims of sentencing" and that such tools, including the

14

discretion to impose a variance sentence, "may allow a trial judge to reach an appropriate sentence by considering the very facts the categorical approach proscribes").

While Mills does not seriously challenge the *substantive* reasonableness of his 70-month sentence, he does challenge its *procedural* reasonableness. Specifically, he argues that "the district court failed to address [his] mitigating arguments, which would have supported a within-[G]uidelines sentence under the properly calculated [G]uidelines range of 37 to 46 months." In making this argument, Mills rightly observes that "[t]his Court has not specifically addressed whether an alternative sentence is subject to the same procedural requirements as a regular sentence." But he fails to recognize that we have consistently framed our reasonableness inquiry in this type of harmless error review as being focused on *substantive* reasonableness. *See, e.g.*, *Gomez-Jimenez*, 750 F.3d at 383 (describing the "second [prong] of the [harmless error] inquiry [as] whether the district court's sentences are *substantively* reasonable" (emphasis added)); *Hargrove*, 701 F.3d at 163 (noting that because the district court expressly stated that it would have imposed the same sentence regardless of its determination of the challenged Guideline issue "[t]he dispositive question . . . is whether the upward variance . . . is *substantively* reasonable under the facts of this case" (emphasis added)).

\*     \*     \*

For the reasons given, we affirm Mills's sentence of 70 months' imprisonment.

AFFIRMED

15