STATE OF NORTH CAROLINA v. FLOYD ALEXANDER CANADY

No. 9212SC613

(Filed 6 July 1993)

**Evidence and Witnesses § 29 (NCI4th)— time of sunset—phase of moon—judicial notice of information from newspaper not required**

The trial court in a homicide prosecution was not required to take judicial notice of the time of the sunset and the phase

of the moon as reported in *The Fayetteville Observer*, since to warrant judicial notice, the source from which the data is drawn must be a document of such indisputable accuracy as would justify judicial reliance; the newspaper was not such a document in this case; and in the case of facts such as those in question here, a document of indisputable accuracy contemplates material from a primary source in whose hands the gathering of such information rests.

**Am Jur 2d, Evidence §§ 14, 18.**

Appeal by defendant from judgment entered 3 March 1992 in Cumberland County Superior Court by Judge Joe Freeman Britt. Heard in the Court of Appeals 11 May 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Paul F. Herzog for defendant-appellant.*

GREENE, Judge.

Appeal by defendant from judgment and commitment to fourteen years imprisonment entered 3 March 1992, after jury verdict convicting him of voluntary manslaughter. N.C.G.S. § 14-18 (1986).

The State's evidence tends to show, *inter alia*, that defendant stabbed George Bullard (Bullard), who was romantically involved with defendant's estranged wife, to death on the evening of 24 May 1990 at the mobile home where defendant's estranged wife was living. One of the State's witnesses, Mrs. Nunnery, testified that her house was approximately 150 feet from Mrs. Canady's mobile home and that she could see Mrs. Canady's mobile home and front yard from her porch. On the evening Bullard was killed, Mrs. Nunnery received a telephone call from Mrs. Canady. Mrs. Nunnery heard a "scuffle" on the phone, and Mrs. Canady asked her to. "call the law," which Mrs. Nunnery did. As she hung up the telephone, Mrs. Canady came into her house.

Mrs. Nunnery then went out onto the front porch and observed Bullard and defendant. She saw Bullard standing beside defendant's car with no weapon in his hand. Defendant was inside the car at the time, but the driver's door was open and defendant's leg was outside the door. Mrs. Nunnery observed that Bullard was attempting to get defendant into his car, and heard Bullard say

"[g]et your leg in and go on. I don't want to fight you." Mrs. Nunnery then went back inside her house. She returned to the front porch minutes later and observed both Bullard and defendant standing outside the car, neither one armed. Mrs. Nunnery returned inside, and then heard defendant call out that an ambulance should be called. Mrs. Nunnery was the only witness, other than defendant, to the altercation. Mrs. Nunnery testified that when she was watching defendant and Bullard "[i]t was still daylight. It was getting toward dusk. . . . [T]here was good light."

Defendant's evidence, consisting primarily of statements made to officers at the scene, tended to establish that he killed Bullard in self-defense, and conflicted with the testimony of Mrs. Nunnery. Defendant did not testify, but claimed in statements made to the police that it was dark when he arrived at the mobile home. Defendant's counsel moved in writing that the trial court take judicial notice of the fact that the sunset on 24 May 1990 occurred at 8:19 p.m., and that there was a new moon on that date. Defendant offered verification of these facts in the form of the reports published daily in *The Fayetteville Observer*. The trial court refused defendant's request. The jury returned a verdict finding defendant guilty of voluntary manslaughter.

Defendant contends that the evidence of the time of sunset and presence of a new moon was critical to his case because such information casts doubt on Mrs. Nunnery's testimony that there was sufficient daylight by which to see the exchanges between defendant and Bullard. Thus, defendant claims, he was prejudiced when the trial court wrongfully refused to take judicial notice of the information offered. The State contends that the information in *The Fayetteville Observer* is not official, and therefore not the proper subject for judicial notice.

---

The dispositive issue is whether the trial court is required to take judicial notice of the time of the sunset and the phase of the moon as reported in *The Fayetteville Observer*.

The Rules of Evidence provide that the trial "court shall take judicial notice [of adjudicative facts] if requested by a party and supplied with the necessary information." N.C.G.S. § 8C-1, Rule 201(d) (1992). Once a request to take judicial notice is made and accompanied by supporting data, the trial court "is entitled to pass upon the sufficiency of the data." 1 Henry Brandis, Jr., *Brandis*

*on North Carolina Evidence* § 11 (3d ed. 1988) (footnote omitted). The trial court weighs the sufficiency of the data by determining whether the fact put forth for judicial notice is

> one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

N.C.G.S. § 8C-1, Rule 201(b) (1992). To warrant judicial notice under the second part of this test, the source from which the data is drawn must be "a document of such indisputable accuracy as [would] justif[y] judicial reliance." *State v. Dancy*, 297 N.C. 40, 42, 252 S.E.2d 514, 515 (1979). It is the responsibility of counsel seeking to have a fact judicially noticed to supply the trial court with such information, and "[t]he trial judge is not required to make an independent search for data of which he may take judicial notice." *Id.*

The exact time of sunset and the current phase of the moon on a particular date are not facts "generally known." They are, however, facts which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Thus, it was the responsibility of defendant's counsel, upon his request that the trial court take judicial notice of the moon phase and time of sunset, to provide that information to the trial court in "a document of such indisputable accuracy as [would] justif[y] judicial reliance." *Dancy*, 297 N.C. at 42, 252 S.E.2d at 515. *The Fayetteville Observer* is not such a document. We note that the newspaper excerpt does not even identify the source of its data. We believe that, in the case of facts such as the time of sunset and the phase of the moon, a document of "indisputable accuracy" contemplates material from a primary source in whose hands the gathering of such information rests. Our Supreme Court has approved this view in *Dancy*, refusing to find error in the trial court's failure to take judicial notice of the phase of the moon when the source was *The Ladies Birthday Almanac*, but taking judicial notice on its own initiative of the same fact as found in the records of the U.S. Naval Observatory. *Id.*

Accordingly, the trial court did not err in failing to take judicial notice of the facts put forth by defendant.

No error.

Judges JOHNSON and WYNN concur.