IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-659
 No. COA20-556

 Filed 7 December 2021

 Martin County, No. 14 CRS 824; 14 CRS 51179; 19 CRS 128

 STATE OF NORTH CAROLINA

 v.

 KEITH AARON BUCKLEW, Defendant.

 Appeal by Defendant from judgment entered 11 December 2019 by Judge

 Leonard L. Wiggins in Martin County Superior Court. Heard in the Court of Appeals

 26 May 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kathryne E.
 Hathcock, for the State.

 The Robinson Law Firm, P.A., by Leslie S. Robinson, for Defendant-Appellant.

 WOOD, Judge.

¶1 Keith Bucklew (“Defendant”) appeals from judgments from the superior court

 finding Defendant guilty of assault with a deadly weapon inflicting serious injury,

 felony serious injury by a motor vehicle, and driving while impaired. We hold the

 trial court committed no error.

 I. Background

¶2 The appeal arises from the convictions of Defendant, a retired Marine with

 twenty years of service. On November 26, 2014, Defendant was driving himself and
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 his ten year old son in a white Land Rover. An eyewitness reported Defendant was

 speeding, drifting within his lane toward the center line, crossing the center line, and

 driving erratically and aggressively. Around dusk, Defendant’s Land Rover swerved

 into oncoming traffic and hit a white Cadillac Escalade driven by Tina Wasinger

 (“Wasinger”), with her two minor sons as passengers, and a Hyundai Sante Fe driven

 by Richard Sermon (“Sermon”), with his wife and four children as passengers.

 Trooper Mark Peaden (“Trooper Peaden”) of the North Carolina State Highway Patrol

 responded to the call. Trooper Peaden observed that Defendant and Wasinger’s

 vehicles had heavy front end damage and Sermon’s vehicle appeared to have been

 sideswiped. As a result of the collision, Wasinger suffered both significant, long-term,

 physical injuries and the loss of her job. At the scene of the accident, Trooper Peaden

 observed that there were no apparent skid marks indicating an attempt to stop the

 vehicle.

¶3 Trooper Peaden located Defendant at the scene and noted Defendant appeared

 impaired; acted loopy, apathetic, and lethargic; had slurred speech; and was very

 tired. Due to Defendant’s injuries, Defendant was transported to the hospital.

 Defendant had sustained substantial injuries, including a fractured femur and

 broken hand.

¶4 At the hospital, Defendant was described as having “droopy eyelids, a blank

 stare, slurred speech and [was] lethargic”; but also having a few coherent moments
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 where he could answer questions. In response to Trooper Peaden’s inquiry about

 whether Defendant was taking any medication or drinking alcohol, Defendant

 responded he was on oxycodone, valium, and morphine which he reported he last took

 at 4:00 o’clock that morning. Trooper Peaden performed an alcosensor breath test on

 Defendant which indicated Defendant had not consumed alcohol prior to the collision.

¶5 Trooper Peaden found Defendant to be at-fault in the collision and impaired to

 the extent he was unable to appreciate the danger of the collision. Trooper Peaden

 placed Defendant under arrest for driving while impaired (“DWI”), notified

 Defendant of his rights to a chemical analysis test, and requested Defendant to

 submit to a chemical analysis test. Defendant’s blood sample revealed the presence

 of oxycodone, diazepam, nordiazepam, and morphine. A urine screen conducted at

 the hospital was positive for benzodiazepines, opiates, and tricyclic antidepressants.1

 Defendant was transported by helicopter to another hospital to receive a higher level

 of care after the blood draw was complete. On November 26, 2014, Defendant was

 indicted for assault with a deadly weapon inflicting serious injury, DWI,

 misdemeanor child abuse, and felony serious injury by vehicle.

¶6 Defendant filed a pretrial motion to suppress the seizure and analysis of his

 1 Benzodiazepines work to sedate or calm a person and includes medication such as

 Valium. NAT’L INSTITUTE ON DRUG ABUSE, https://www.drugabuse.gov/drug-
 topics/opioids/benzodiazepines-opioids, (last visited Oct. 15, 2021).
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 blood. The trial court denied Defendant’s motion to suppress, explaining that based

 upon testimony from Trooper Peaden; the eyewitness’s, a hospital nurse’s,

 Defendant’s and Sermon’s statements; the emergent medical care needed by

 Defendant; and the results of Defendant’s blood draw, there was sufficient probable

 cause to charge Defendant with the offense of DWI and there was sufficient exigent

 and articulable basis to conduct a warrantless blood draw for a chemical analysis.

 The trial court also denied Defendant’s motion for judicial notice of the National

 Weather Service’s weather report (“Weather Report”), motions to dismiss, objection

 to the lab and chain of custody report, and objection to the analyst’s testimony

 regarding Defendant’s blood sample. On December 11, 2019, Defendant was found

 guilty of assault with a deadly weapon inflicting serious injury, DWI, and felonious

 serious injury by a motor vehicle. On appeal, Defendant contends the trial court erred

 by denying Defendant’s motion for judicial notice, motion to suppress the blood draw,

 and motion to dismiss, and by admitting, over Defendant’s objection, the lab result

 and chain of custody report and analyst’s testimony.

 II. Discussion

 A. Motion to Suppress Defendant’s Blood Draw

 1. Competent Evidence Existed

¶7 We turn first to Defendant’s contention the trial court’s findings of fact in the

 order denying Defendant’s motion to suppress the blood draw (the “Denial Order”)
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 were not supported by competent evidence. We note at the outset the standard of

 review for a motion to suppress is not substantial competent evidence, but rather a

 lower threshold of competent evidence. State v. Biber, 365 N.C. 162, 167-68, 712

 S.E.2d 874, 878 (2011). “In reviewing a trial judge’s ruling on a suppression motion,

 we determine only whether the trial court’s findings of fact are supported by

 competent evidence, and whether these findings of fact support the [trial] court’s

 conclusions of law.” State v. Pulliam, 139 N.C. App. 437, 439-40, 533 S.E.2d 280, 282

 (2000) (citation omitted and emphasis added)). The trial court’s findings of fact which

 are supported by competent evidence are “conclusive on appeal . . . even if the

 evidence is conflicting.” State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826

 (2010) (quoting State v. Eason, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994)). “[T]he

 trial court’s conclusions of law are reviewed de novo and must be legally correct.”

 State v. Scruggs, 209 N.C. App. 725, 727, 706 S.E.2d 836, 838 (2011) (citation

 omitted).

¶8 Here, the findings of fact in the Denial Order support the conclusion probable

 cause and exigent circumstances existed to initiate a warrantless blood draw.

 Probable cause is the “facts and circumstances within an officer’s knowledge and of

 which he had reasonably trust-worthy information which are sufficient to warrant a

 prudent man in believing that the suspect had committed or was committing an

 offense.” State v. Williams, 314 N.C. 337, 343, 333 S.E.2d 708, 713 (1985) (citations
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 omitted). Whether exigent circumstances exist as to justify a warrantless blood draw,

 though yet to be precisely defined, depends on the totality of the circumstances.

 Missouri v. McNeely, 569 U.S. 141, 156, 133 S. Ct. 1552, 1563, 185 L. Ed. 2d 696, 709

 (2013); State v. McCrary, 237 N.C. App. 48, 53, 764 S.E.2d 477, 481 (2014).

¶9 We are not persuaded by Defendant’s argument the Denial Order’s findings of

 fact were not supported by competent evidence. The evidence in the record tends to

 show the eyewitness reported that Defendant, prior to collision, crossed the center

 line, drifted within his lane, and drove aggressively and erratically. Sermon testified

 Defendant’s vehicle swerved from oncoming traffic and “almost made like a left turn

 directly into [Wasinger’s vehicle] . . . .” Once Trooper Peaden arrived at the scene, he

 noted there were no skid marks indicating any attempt to stop. After Defendant was

 transported to the hospital due to his injuries, a breath alcosensor test revealed no

 presence of alcohol, but Defendant admitted to taking oxycodone, valium, and

 morphine that morning. When Trooper Peaden spoke with Defendant at the hospital,

 he noticed Defendant had slurred speech, a loopy demeanor, was lethargic and slow

 to answer questions. At one point Defendant told Trooper Peaden he did not

 remember what happened while, at another point, he told Trooper Peaden he was hit

 by a car. Nurse Warren, a nurse at the first hospital to which Defendant was taken,

 testified Defendant had a significant injury to his femur, injury to his neck, a

 contusion, a fracture, swelling, and enlarged pupils, and that he was falling asleep
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 between questions.

¶ 10 Based off his observations, Trooper Peaden formed the opinion Defendant had

 consumed a “sufficient quantity of impairing substances so that his mental and

 physical facilities were appreciably impaired.” However, Trooper Peaden did not

 have time to leave the hospital to acquire a search warrant because Defendant was

 “very, very badly injured” and the hospital does not administer pain medication until

 after a blood draw is performed. Defendant’s injuries, moreover, were so severe as to

 warrant air-lifting Defendant to another hospital for a higher level of care after the

 blood draw was complete. Based on the evidence presented at trial, there was

 competent evidence to support the findings of fact in the Denial Order.

¶ 11 In addition to a general challenge to the findings of fact in the Denial Order,

 Defendant specifically challenges findings of fact twelve, fourteen, seventeen, and

 twenty-three.

 a. No Error as to Finding of Fact Number 12

¶ 12 Finding of fact number twelve states, “Stacy Toppin, RN, described the

 defendant as alert and able to answer questions. She described his speech as slow

 and thick tongued. He was further described as neurologically intact with no visible

 head injuries. She described his pupils as appearing pinpoint.” Competent evidence

 exists to support fact number twelve through Stacy Toppin’s testimony where she

 stated Defendant “had slurred speech at the time, [was a] little thick tongue, [and
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 had a] little bit of confusion[,]” and his pupils were “pinpoint looking.” On voir dire,

 Stacy Toppin explained that Defendant had no apparent head injuries, was stable,

 and was able to answer questions. The testimony provided by Stacy Toppin provided

 competent evidence to support finding of fact number twelve.

 b. No Error as to Findings of Fact Number 14 and 17

¶ 13 Findings of fact fourteen and seventeen state:

 (14) [i]n addition to defendant’s statement and disclosures,
 Trooper Peaden also administered a portable breath test in
 an effort to rule out the presence of alcohol. Due to the
 acute nature of the defendant’s injuries, the court finds
 that it was not appropriate to administer or attempt to
 administer the Horizontal Gaze Nystagmus, the Walk and
 Turn or One-legged stand test standard field sobriety tests
 due to the acute nature of the defendant’s injuries and the
 dynamic and emergent medical nature of the environs and
 surroundings of a medical facility.

 ...

 (17) [a]fter stabilizing treatment was administered at
 Martin General Hospital, the defendant was subsequently
 transferred to Vidant Greenville for further and more
 advanced trauma care, which further demonstrated the
 dynamic and emergent medical care needed by the
 defendant which further underscores the necessity and
 exigency for a blood draw.”

¶ 14 At trial, the evidence showed Defendant sustained substantial injuries

 including a broken hand and fractured femur. Defendant’s injuries were so severe he

 ultimately had to be transported by helicopter to another hospital for more advanced

 care. Despite the existence of conflicting evidence which may refute finding of fact
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 number fourteen, conflicting evidence does not affect a finding of fact which is

 supported by competent evidence. Buchanan, 353 N.C. at 336, 543 S.E.2d at 826.

 Based on the severity of Defendant’s injuries, findings of fact numbers fourteen and

 seventeen were supported by competent evidence.

 c. No Error as to Finding of Fact 23

¶ 15 Finding of fact number twenty-three states, “[n]o search warrant was obtained

 or necessary based on the facts and totality of the circumstances presented.” The

 evidence tends to show Trooper Peaden found probable cause existed Defendant had

 committed the offense of DWI based on Defendant’s admission to taking multiple

 medications, the lack of skid marks indicating any attempt to stop, eye witness

 reports of Defendant’s erratic driving, and Defendant’s lethargic and loopy behavior.

 Moreover, per our analysis above, Defendant’s injuries were substantial and required

 immediate medical care, including the administration of pain-relieving medication.

 Because of the evidence presented, finding of fact number twenty-three is based upon

 competent evidence.

 2. Warrantless Blood Draw was Justified

¶ 16 Next, Defendant argues the findings of fact do not support the conclusion that

 exigent circumstances and probable cause existed to support a warrantless blood test.

 Both the Fourth Amendment to the United States Constitution and Article I Section

 20 of the North Carolina Constitution protect a person from unreasonable searches
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 and seizures. U.S. Const. Amend. IV; N.C. Const. art. I, § 20. Blood tests “plainly

 constitute searches of persons” and thus are considered seizures under the Fourth

 Amendment. Schmerber v. California, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L.

 Ed. 2d 908, 918 (1996) (internal quotation marks omitted); see also State v. Carter,

 322 N.C. 709, 714, 370 S.E.2d 553, 556 (1988) (holding “[t]he withdrawal of a blood

 sample from a person is a search subject to protection by article I, section 20 of our

 constitution”). A blood test may only be performed after a warrant or valid consent

 is obtained or under exigent circumstances with probable cause “unless probable

 cause and exigent circumstances exist that would justify a warrantless search.” State

 v. Welch, 316 N.C. 578, 585, 342 S.E.2d 789, 793 (1986). See State v. Romano, 369

 N.C. 678, 692, 800 S.E.2d 644, 653 (2017).

¶ 17 First we must determine whether probable cause existed. Probable cause is

 defined as “a reasonable ground of suspicion, supported by circumstances sufficiently

 strong in themselves to warrant a cautious man in believing the accused to be guilty.”

 State v. Smith, 222 N.C. App. 253, 255, 729 S.E.2d 120, 123 (2012) (citation omitted).”

 See Carroll v. United States, 267 U.S. 132, 161, 45 S. Ct. 280, 288, 69 L. Ed. 543, 555

 (1925) (citation omitted). Here, the circumstances provided Trooper Peaden with

 reasonable grounds to suspect Defendant had committed the offense of a DWI. Prior

 to the accident, an eyewitness placed a 911-call to report to the police Defendant was

 driving erratically, Defendant’s vehicle was “weaving about the road[,]” and
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 Defendant ultimately struck two vehicles. Upon arriving to the scene of the accident,

 Trooper Peaden discovered further evidence which indicated Defendant was

 responsible for the crash. Trooper Peaden observed vehicle debris were “everywhere”,

 three heavily damaged vehicles were present including Defendant’s car, and no brake

 skid marks were present to indicate anyone attempted to stop their vehicles prior to

 the collision. All three vehicles rested outside of and to the left of Defendant’s lane of

 travel. Trooper Peaden did not detect alcohol on Defendant, but Defendant

 voluntarily admitted to taking his medications that morning. Defendant held valid

 prescriptions for oxycodone, valium, and morphine and voluntarily stated to Trooper

 Peaden he had last taken his medications that morning at 4 a.m. Trooper Peaden

 described Defendant as lethargic, and having slurred speech, droopy eyelids, and a

 blank stare. However, Defendant’s injuries were of such severity that he was

 classified as a trauma patient and was rapidly deteriorating. Based on these findings

 of fact, the trial court properly concluded probable cause existed to perform a

 warrantless blood test. Accordingly, this Court is compelled to hold the trial court

 did not err when it determined probable cause existed for Trooper Peaden to form the

 opinion that Defendant had committed the offense of DWI so as to justify a

 warrantless blood test.

¶ 18 Turning our analysis to whether the findings of fact supported the conclusion

 exigent circumstances were present, the underlying question as to whether exigent
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 circumstances exist is whether “there is a compelling need for official action and no

 time to secure a warrant.” Missouri v. McNeely, 569 U.S. 141, 149, 133 S. Ct. 1552,

 1559, 185 L. Ed. 2d 696, 705 (2013) (citation omitted). In the case of a DWI, the

 reasonableness of a warrantless blood test “must be determined case by case based

 on the totality of the circumstances.” Id. at 156, 133 S. Ct. at 1563, 185 L. Ed. 2d at

 709 (2013). See State v. Dahlquist, 231 N.C. App. 100, 103, 752 S.E.2d 665, 667

 (2013). Though the natural dissipation of a substance within a person’s blood stream

 is a factor to consider, it is not a per se exception to the totality of the circumstances

 test. McNeely, 569 U.S. at 156, 133 S. Ct. at 1563, 185 L. Ed. 2d at 709. In State v.

 Granger, we held a totality of the circumstances illustrated exigent circumstances

 when sufficient probable cause had already been established, the officer could not

 thoroughly investigate due to the extent of defendant’s injuries, delays in the warrant

 application process, and the potential of imminent administration of pain medication.

 State v. Granger, 235 N.C. App. 157, 165, 761 S.E.2d 923, 928 (2014).

¶ 19 In this case, like Granger, a totality of the circumstances show exigent

 circumstances existed to justify a warrantless blood draw. First, sufficient probable

 cause existed to establish Defendant was driving while impaired prior to the

 initiation of the blood draw. (R p 53). Next, the officer was not able to thoroughly

 question Defendant at the scene of the accident because Defendant was “pinned in

 his vehicle” and subsequently taken to the hospital as a trauma patient due to the
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 extent of Defendant’s injuries. (R p 51, 52). Indeed, Defendant’s own affidavit

 confirmed Defendant’s injuries caused “acute blood loss.” (R p 52). Moreover,

 Defendant’s “condition was deteriorating” due to his injuries. (R p 52). In light of

 these circumstances, the officer did not have the time necessary to acquire a search

 warrant due to the extent of Defendant’s injuries and the fact that pain medication

 in par with stabilizing treatment was administered immediately after a blood drawn

 was taken. (R p 53). Defendant was transferred to another hospital for advanced

 trauma care due to the severity of his injuries and his deteriorating medical condition.

 (R p 53). Although we question the efficacy of reading Defendant his Notice of Rights

 when he was in such critical condition, the totality of the circumstances in the instant

 case shows the lack of time to acquire a warrant in light of the compelling need to

 perform a blood test on Defendant once the officer formed the opinion that Defendant

 had driven while impaired. Thus, we must hold the trial court did not err when

 finding sufficient exigent circumstances existed to justify a warrantless blood draw.

 B. Judicial Notice of Weather Conditions

¶ 20 Defendant next argues the trial court erred by not taking judicial notice of the

 Weather Report. (App Br p 24). We also conclude the trial court did not err by

 denying to take judicial notice of the National Weather Station’s weather conditions

 on the date of the collision. (App Br p 24). Under N.C. Gen. Stat. § 8C-1 Rule 201(b)

 “[a] judicially noticed fact must be one not subject to reasonable dispute in that it is
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 either (1) generally known within the territorial jurisdiction of the trial court or (2)

 capable of accurate and ready determination by resort to sources whose accuracy

 cannot reasonably be questioned.” N.C. Gen. Stat. § 8C-1, Rule 201(b) (2021). An

 indisputable fact is one that is “so well established as to be a matter of common

 knowledge.” In re L.G.A., 277 N.C. App. 46, 2021-NCCOA-137, ¶24 (citation omitted).

 A trial court has discretion when deciding whether or not to take judicial notice, and

 this Court reviews for abuse of discretion. State v. McDougald, 38 N.C. App. 244,

 248, 248 S.E.2d 72, 77 (1978). However, a court “cannot take judicial notice of a

 disputed question of fact,” Hinkle v. Hartsell, 131 N.C. App. 833, 836, 509 S.E.2d 455,

 458 (1998) (citation omitted), and “any subject that is open to reasonable debate is

 not appropriate for judicial notice.” In re R.D., 376 N.C. 244, 264, 852 S.E.2d 117,

 132 (2020) (citation and internal ellipses omitted).

¶ 21 This Court’s opinion in State v. McDougald describes an applicable example of

 when the trial court did not abuse its discretion by denying a defendant’s motion to

 take judicial notice. In McDougald, the defendant appealed the trial court’s denial to

 take judicial notice of news broadcasts concerning the case. State v. McDougald, 38

 N.C. App. 244, 248, 248 S.E.2d 72, 77 (1978). The McDougald Court rejected the

 defendant’s assignment of error, writing, “[s]uch facts could have been easily proven

 by witnesses ordinarily available. There was no showing of abuse of discretion by the

 trial court. Therefore, the trial court did not err in failing to take judicial notice that
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 the case was the subject of radio and television broadcasts.” Id. McDougald held a

 trial court does not abuse its discretion when denying to take judicial notice of a fact

 if there exists an opportunity to otherwise prove the fact at trial.

¶ 22 This concept has direct application to the trial court’s decision not to take

 judicial notice of the Weather Report in this case. The trial court denied Defendant’s

 motion for judicial notice as multiple witnesses testified to the weather conditions on

 the date of the collision. Thus the trial court had the right to conclude sufficient

 evidence existed from the witnesses’ testimonies to allow the jury to form their own

 conclusion on the state of the weather. Following the reasoning in McDougald, the

 trial court did not abuse its discretion when it declined to take judicial notice of the

 National Weather Service weather conditions report on the date of collision.

¶ 23 Against this conclusion, Defendant argues his motion for judicial notice should

 have been granted under N.C. Gen. Stat. § 8C-1, Rule 201(d). Rule 201(d) states “[a]

 court shall take judicial notice if requested by a party and supplied with the necessary

 information.” § 8C-1, Rule 201(d). The implication, Defendant argues, is that “the

 trial court has no discretion when supplied with the information prescribed by Rule

 201.” Of course Rule 201(d) is only a portion of Rule 201 as a whole, and thus we

 must view section (d) in light of the entirety of Rule 201. See Pilos-Narron v. Narron,

 239 N.C. App. 573, 771 S.E.2d. 633 (2015) (viewing the portion of Rule 56(e) quoted

 by plaintiff in its entirety).
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

¶ 24 Section (d) of Rule 201 is predicated upon the two-part test of Rule 201’s

 Section (b) which states a judicially noticed fact is one that cannot be reasonably

 disputed because it is either 1) general knowledge or 2) “capable of accurate and ready

 determination by resort to sources whose accuracy cannot reasonably be questioned.”

 § 8C-1, Rule 201(b). The issue in contention here is the level of rain fall at the time

 of the collision, thus why, not unreasonably, Defendant wanted the trial court to take

 judicial notice of the Weather Report. However, the contentious issue, the level of

 rainfall fails the first prong of Section (b)’s test because though individuals may know

 if it is raining, the precise amount of rain is not a generally known fact. Under the

 second prong of the test, sources as used in Section (b) must be “a document of such

 indisputable accuracy as [to] justif[y] judicial reliance.” State v. Dancy, 297 N.C. 40,

 42, 252 S.E.2d 514, 515 (1979). The amount of rain is generally a fact that is “capable

 of accurate and ready determination by resort to sources whose accuracy cannot

 reasonably be questioned.” N.C. Gen. Stat. § 8C-1, Rule 201(b) (2021). In State v.

 Canaday, this Court held a document of indisputable accuracy “contemplates

 material from a primary source in whose hands the gathering of such information

 rests.” 110 N.C. App. 763, 766, 431 S.E.2d 500, 501 (1993). Flowing from our

 reasoning in Canaday, weather reports from the National Weather Service are a

 result of data gathered by the National Weather Service and thus typically are
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 documents of indisputable accuracy.2 See Bain Enters., LLC v. Mountain States

 Mutality Casualty Co., 267 F. Supp. 3d 796, 819 (W.D. Tex. 2016); Kovera v. Envirite

 of Ill., Inc., 2015 IL App (1st) 133049, ¶28.

¶ 25 However, this proffered Weather Report from the National Weather Service is

 not a document of indisputable accuracy for the purpose of illustrating the amount of

 rain on the date of the collision. The Weather Report for the date of the crash does

 not state the level of rain that was occurring at the time of the crash. An examination

 of the Weather Report reveals the level of rain stopped being reported for the day up

 to three hours prior to the collision. The party moving for judicial notice has the

 responsibility to “supply [the trial judge] with appropriate data” as the “trial judge is

 not required to make an independent search for data of which he may take judicial

 notice.” Dancy, 297 N.C. at 42, 252 S.E.2d at 515. Because the proffered weather

 report did not contain the necessary data showing the level of rain at the time of the

 collision, the Weather Report fails under the second prong of Rule 201(b). The trial

 2 Forecast from the National Weather service is the product of observations from
 scientists “using technology such as radar, satellite and data from an assortment of ground-
 based and airborne instruments to get a complete picture of current conditions. Forecasters
 often rely on computer programs to create what’s called an ‘analysis,’ which is simply a
 graphical representation of current conditions. Once this assessment is complete and the
 analysis is created, forecasters use a wide variety of numerical models, statistical and
 conceptual models, and years of local experience to determine how the current conditions will
 change with time. Numerical modeling is fully ingrained in the forecast process, and our
 forecasters review the output of these models daily.” NATIONAL WEATHER SERVICE,
 https://www.weather.gov/about/forecast-process (last visited Sept. 21, 2021).
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 court was not required under Rule 201(d) to take judicial notice but was free to use

 its discretion pursuant to Rule 201(c). Accordingly, we are compelled to hold the trial

 court did not abuse its discretion by not taking judicial notice of the Weather Report.

 C. Lab and Chain of Custody Report

¶ 26 We next turn to Defendant’s assignment of error to the trial court’s admission

 of the lab and chain of custody report (the “Report”) of Defendant’s blood and Evan

 Lowery’s (“Lowery”) testimony regarding Defendant’s blood sample. Defendant

 argues his right to confrontation and cross-examination were violated because only

 Lowery, the State’s independent expert, testified at trial, not the people who actually

 conducted the analysis of his blood and urine samples. We disagree and conclude the

 trial court did not err in admitting the Report.

¶ 27 First, Lowery’s testimony was properly admitted by the trial court. The United

 States Constitution’s Confrontation Clause prohibits expert testimony that is

 predicated only on the reports of an analyst who is not testifying. State v. Locklear,

 363 N.C. 438, 452-53, 681 S.E.2d 293, 304-05 (2009). An expert’s testimony is

 nonetheless admissible “when the expert testifies not just to the results of other

 experts’ tests, but to her own technical review of these tests, her own expert opinion

 of the accuracy of the non-testifying experts tests, and her own expert opinion based

 on a comparison of the original data.” State v. Hartley, 212 N.C. App. 1, 12-13, 710

 S.E.2d 385, 396 (2011) (citation and internal quotations omitted). The crucial
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 question here is whether Lowery’s testimony was merely a recitation of the analysts’

 Report or was his independent expert opinion derived from the proper methods.

¶ 28 A review of the record reveals Lowery’s expert testimony was admissible.

 Lowery was admitted as an expert in forensic toxicology and utilized his “training,

 education, and experience” in conducting his analysis of the data. Though Lowery

 received data from the analysis done at the crime lab, Lowery analyzed and reviewed

 the data, analyzed Defendant’s blood sample in accordance with the North Carolina

 State Crime Laboratory and Department of Health and Human Services, crafted with

 his own opinion as to the results of the data, and finally produced the Report utilized

 at trial. In other words, the Report introduced at trial was created by Lowery, not

 the analysts who did not testify. Although the data used by Lowery originated from

 other analysts, the Report was an independent expert opinion analyzed and created

 by Lowery, and, accordingly, the trial court did not err in admitting Lowery’s

 testimony.

¶ 29 Second, Defendant argues the State failed to establish the chain of custody and

 the trial court erred in admitting the chain of custody report. Our Supreme Court

 requires a two-prong test to be satisfied prior to the admission of evidence: the “item

 offered must be identified as being the same object involved in the incident and it

 must be shown that the object has undergone no material change.” State v. Taylor,

 332 N.C. 372, 388, 420 S.E.2d 414, 423-24 (1992) (quoting State v. Campbell, 311 N.C.
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 386, 388, 317 S.E.2d 391, 392 (1984)). The State does not need to establish a detailed

 chain of custody unless “the evidence offered is not readily identifiable or is

 susceptible to alteration and there is reason to believe that it may have been altered.”

 Campbell, 311 N.C. at 389, 317 S.E.2d at 392. Even if the chain of custody does have

 points of weakness, this only goes to the “weight to be given the evidence and not to

 its admissibility.” Id. (citation omitted).

¶ 30 In light of these principles, we hold the trial court did not abuse its discretion

 by finding the State established an adequate chain of custody. Trooper Peaden

 testified after Defendant’s blood was taken by the nurse, the blood was then

 transferred to the officer. The blood vial contained a security seal which identifies

 Defendant, the person who drew the blood, and the date and time. The subsequent

 signatories to the chain of custody revealed Defendant’s blood sample was received

 by the State crime lab. Lowery testified to the chain of custody of Defendant’s blood

 from the date it was received by the State crime lab until the date the blood was

 analyzed. The testimonies from both Trooper Peaden and Lowery satisfy both prongs

 required for admission of evidence by our Supreme Court. The security seal upon the

 vial and the chain of custody report tend to prove the sample at all times contained

 Defendant’s blood and no material change occurred throughout the transfers and

 testing of the blood. See Taylor, 332 N.C. at 388, 420 S.E.2d at 423-24. In summation,

 the testimony presented effectively established the chain of custody and the trial
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 court committed no error by admitting the chain of custody report.

¶ 31 Defendant raises questions about the circumstances surrounding his blood

 sample in order to undermine the admissibility of the chain of custody report. These

 purported points of weakness only go to the “weight to be given the chain of custody

 not its admissibility.” Campbell, 311 N.C. at 389, 317 S.E.2d at 392. Under

 Campbell, the evidence presented must not only be susceptible to alteration or not

 readily identifiable, but also there must be a reason to believe the evidence was

 altered. Id. Here, Defendant offered no reason to believe the blood sample was

 altered and thus his attempt to present questionable circumstances surrounding the

 blood sample fails under Campbell. The conclusion follows that the trial court did

 not abuse its discretion by admitting the chain of custody report.

 D. Defendant’s Motion to Dismiss

¶ 32 Finally, we look to Defendant’s argument the trial court erred in denying

 Defendant’s motion to dismiss first at the close of the State’s evidence and then at the

 close of all evidence. We review a motion to dismiss de novo. Locklear v. Cummings,

 262 N.C. App. 588, 592, 822 S.E.2d 587, 590 (2018). In a criminal trial, the law is

 well settled as follows, “upon defendant's motion for dismissal, the question for the

 Court is whether there is substantial evidence (1) of each essential element of the

 offense charged, or of a lesser offense included therein, and (2) of defendant’s being

 the perpetrator of such offense. If so, the motion is properly denied.” State v. Powell,
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). A motion to dismiss should be allowed

 if the evidence only raises a “suspicion or conjecture as to either the commission of

 the offense or the identity of the defendant as the perpetrator of it.” Id. (citations

 omitted). Evidence is to be viewed in “the light most favorable to the State” and tested

 only to determine if a “reasonable inference of the defendant’s guilt of the crime

 charged may be drawn from the evidence.” Id. at 99, 261 S.E.2d. at 117 (citations

 omitted and emphasis in original).

¶ 33 Defendant alleges there was no substantial evidence for the offenses of

 impaired driving, assault with a deadly weapon inflicting serious injury, and

 felonious serious injury by vehicle. First, Defendant was charged with driving while

 impaired under N.C. Gen. Stat. § 20-138.1 which provides, in relevant parts, “[a]

 person commits the offense of impaired driving if he drives any vehicle upon any

 highway, any street, or any public vehicular area within this State . . . [w]hile under

 the influence of an impairing substance . . . .” N.C. Gen. Stat. § 20-138.1(a) (2021).

 The State showed a white Land Rover was reported to be driving erratically upon a

 public road in North Carolina; a crash later occurred caused by the Land Rover; and

 when Trooper Peaden arrived at the scene, Defendant was trapped inside the Land

 Rover in the driver’s seat. As analyzed above, probable cause existed to charge

 Defendant with the offense of DWI based upon eyewitness reports of Defendant’s

 erratic driving, the severity of the crash, Defendant’s admission of taking his
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 medications that morning, Defendant’s impaired behavior, and the result of

 Defendant’s blood test. As such, we are obligated to hold substantial evidence exists

 to support each element of driving while impaired and that Defendant was the one

 who committed the DWI.

¶ 34 Next, Defendant was charged with assault with a deadly weapon inflicting

 serious injury to Tina Wasinger pursuant to N.C. Gen. Stat. 14-32(b) which states,

 “[a]ny person who assaults another person with a deadly weapon and inflicts serious

 injury shall be punished as a Class E felon.” N.C. Gen. Stat. § 14-32(b) (2021). The

 elements of a Statute 14-32(b) are “(1) an assault (2) with a deadly weapon (3)

 inflicting serious injury (4) not resulting in death.” State v. Aytche, 98 N.C. App. 358,

 366, 391 S.E.2d 43, 47 (1990). An assault is “an overt act or attempt, with force or

 violence, to do some immediate physical injury to the person of another, which is

 sufficient to put a person of reasonable firmness in fear of immediate physical injury.”

 State v. Jones, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000) (citation omitted). A

 deadly weapon is “any article, instrument or substance which is likely to produce

 death or great bodily harm.” Id. (citation omitted and emphasis in original).

¶ 35 In North Carolina, an automobile “can be a deadly weapon if it is driven in a

 reckless or dangerous manner.” Id. One who “operates a motor vehicle in a manner

 such that it constitutes a deadly weapon, thereby proximately causing serious injury

 to another, may be convicted of AWDWISI provided there is either an actual intent
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 to inflict injury or culpable or criminal negligence from which such intent may be

 implied.” Id. at 164-65, 538 S.E.2d at 922-23. Culpable or criminal negligence is

 defined as “such recklessness or carelessness, proximately resulting in injury or

 death, as imports a thoughtless disregard of consequences or a heedless indifference

 to the safety and rights of others.” Id. at 165, 538 S.E.2d at 923 (quoting State v.

 Weston, 273 N.C. 275, 280, 159 S.E.2d 883, 886 (1968)).

¶ 36 Particularly, culpable negligence exists when a safety statute is

 unintentionally violated and is “accompanied by recklessness of probable

 consequences of a dangerous nature, when tested by the rule of reasonable

 [foreseeability], amounting altogether to a thoughtless disregard of consequences or

 of a heedless indifference to the safety of others.” Id. (quoting State v. Hancock, 248

 N.C. 432, 435, 103 S.E.2d 491, 494 (1958)). A safety statue is one that is “designed

 for the protection of human life or limb.” State v. McGill, 314 N.C. 633, 637, 336

 S.E.2d 90, 92 (1985) (citation omitted). We note as well, N.C. Gen. Stat. § 20-138.1 is

 a safety statute created to protect human life or limb by prohibiting driving impaired.

 See Jones, 353 N.C. at 165, 538 S.E.2d at 923.

¶ 37 In the case before us, Defendant assaulted Wasinger by hitting her vehicle with

 his vehicle, a white Land Rover. According to eyewitness reports and the lack of skid

 marks to indicate an attempt to stop his vehicle, Defendant was driving his vehicle

 in an erratic and reckless manner. Thus, Defendant’s vehicle may be considered a
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 deadly weapon. As a matter of law, Defendant’s culpable negligence was established

 when Defendant proceeded to operate a vehicle while under the influence of impairing

 substances. Such negligence was further shown by reports of Defendant’s driving

 from both Sermon and another eyewitness. Though Wasinger survived the crash, she

 suffered serious injury, including weeks in the hospital, two months in a wheelchair,

 and extremely restricted movement of her hand and legs. Due to her injuries,

 Wasinger lost her job and is now enrolled in disability with Social Security. In sum,

 the elements of assault with a deadly weapon inflicting serious injury were satisfied,

 and we affirm the judgment of the trial court.

¶ 38 Defendant was also convicted of felony serious injury by motor vehicle under

 N.C. Gen. Stat. § 20-141.4(a3) which provides,

 A person commits the offense of felony serious injury by
 vehicle if:

 (1) The person unintentionally causes serious injury to
 another person,

 (2) The person was engaged in the offense of impaired
 driving under G.S. 20-138.1 or G.S. 20-138.2, and

 (3) The commission of the offense in subdivision (2) of this
 subsection is the proximate cause of the serious injury.

 N.C. Gen. Stat. § 20-141.4(a3) (2021). Because we have already explained that

 substantial evidence exists to illustrate Defendant caused serious injury to Wasinger

 due to his driving while impaired, the elements of felony serious injury by motor
 @CASE NAME SHORT TITLE

 2021-NCCOA-659

 @NAME, J., @type of opinion

 vehicle were met. Thus, the trial court did not err in denying Defendant’s motion to

 dismiss.

 III. Conclusion

¶ 39 As a result of the foregoing analysis, we are compelled to hold there was no

 error when the trial court denied Defendant’s motion to suppress the blood draw,

 declined to take judicial notice of the Weather Report, admitted the Report and

 Lowery’s testimony, and denied Defendant’s motion to dismiss. While we sympathize

 with Defendant in that he was operating his vehicle while under the influence of only

 prescribed medications and not under the influence of alcohol and was also seriously

 injured in the resulting collision, we hold that the Defendant received a fair trial free

 from error.

 NO ERROR.

 Judges DIETZ and INMAN concur.